HILLSIDE ASSOCIATES

v.

Louis R. STRAVATO.

No. 93–85–A.

Supreme Court of Rhode Island.

June 2, 1994.

Mark E. Liberati, Leroy, Liberati & Peretti, Providence, for plaintiff.

Ira L. Schreiber, Schreiber & Schreiber, Cranston, for defendant.

## OPINION

LEDERBERG, Justice.

This matter came before the Supreme Court on the appeal of Hillside Associates (Hillside or plaintiff) from a directed verdict in favor of Louis R. Stravato (Stravato or defendant). The sole issue before us is whether the defendant's appeal of the issuance of a building permit to the plaintiff can subject the defendant to liability for malicious prosecution and/or abuse of process. For the reasons stated herein, we conclude that such causes of action may arise from the misuse of administrative proceedings. Facts pertinent to this appeal follow.

## BACKGROUND

The plaintiff, a limited partnership, formulated a plan in the early 1970s to build a forty-two-unit subsidized housing project (project) on land located on Plainfield Street, Providence, Rhode Island. The plaintiff's plans, however, met fierce opposition from residents of the neighborhood. *See Mesolella v. City of Providence,* 439 A.2d 1370, 1372 (R.I.1982). The defendant, who, as a member of the Providence City Council, represented the Plainfield Street neighborhood from 1975 to 1989 and was a landowner within one mile of the proposed project, took up his constituents' cause and vigorously challenged the project. One action initiated by defendant was an amendment to the city zoning ordinance that changed the area from its R–3 designation, which permitted multiple-unit dwellings, to an R–1 zone, which prohibited multifamily housing, and thereby barred the project. Following plaintiff's challenge, this court held that the amendment was null and void in respect to plaintiff's land, *id.* at 1375, after which decision the project was resumed.

After an action in Federal District Court,[1] plaintiff received the necessary building per-

---

1. In 1985 Hillside, along with a housing advocacy group called Project BASIC, filed suit in Federal District Court for the District of Rhode Island against the city of Providence, Stravato, and

mit from the Providence building inspector on July 14, 1989. Within a week or two, plaintiff began surveying and clearing the land for construction. But defendant appealed the issuance of the building permit to the Providence Zoning Board of Review (board),[2] and a cease-and-desist order halted further construction of the project during defendant's appeal. In his appeal to the board, defendant alleged that, because plaintiff's proposal did not comply with a Providence zoning ordinance that set out parking requirements for dwellings, the building permit had been issued illegally. After a hearing, the board, on October 6, 1989, found that the proposed project complied with the Providence Code of Ordinances, rejected defendant's appeal, and ruled that the permit had been properly issued. The plaintiff resumed construction and completed the project on July 30, 1990, almost twenty years after its inception.

In 1989, before the project was completed, plaintiff filed the instant action against defendant, seeking monetary damages for one count of malicious prosecution and one count of abuse of process. The Superior Court initially granted summary judgment in favor of defendant. On appeal, however, this court vacated that judgment and remanded the case for trial on the merits. *Hillside Associates v. Stravato*, 590 A.2d 105, 105 (R.I.1991). Trial was commenced on September 24, 1992. At the conclusion of plaintiff's presentation of evidence, the trial justice granted defendant's motion for a directed verdict. The plaintiff then filed this appeal pursuant to G.L.1956 (1985 Reenactment) § 9–24–1.

## STANDARD OF REVIEW

We note that when reviewing a decision by the trial court "on a motion for a directed verdict, this court is bound by the same rules that govern the trial justice," *Rodrigues v.*

*Miriam Hospital,* 623 A.2d 456, 460 (R.I. 1993), namely, "[w]e must examine all the evidence in the light most favorable to the nonmoving party without considering the weight of the evidence or the credibility of the witnesses. We must draw from that evidence only those reasonable inferences that support the position of the opposing party." *Id.*

## THE INSTANT APPEAL: ANALYSIS

The trial justice granted the directed verdict for defendant after determining that claims for malicious prosecution and abuse of process cannot arise from an appeal to a zoning board of review. The sole issue on appeal, then, is whether the initiation of such an administrative proceeding can give rise to liability for malicious prosecution and/or abuse of process.

We impliedly suggested our response in the earlier appeal from summary judgment. *Hillside,* 590 A.2d at 105. In that per curiam opinion, we held that summary judgment had been improper because there was an outstanding issue of fact "concerning whether or not defendant's appeal from the awarding of a building permit *could have constituted an abuse of the administrative appellate process* and may have been taken for purposes which might be found to be malicious." (Emphasis added.) *Id.* Upon remand, however, in deciding defendant's motion for a directed verdict, the trial justice ruled that claims for malicious prosecution and abuse of process can arise only by subversion of a *judicial* process. With this opinion, we expand our previous formulation, and conclude that, in the proper circumstances, claims for malicious prosecution and/or abuse of process may arise from a party's malicious use or abuse of an *administrative* process.

various other officials and state agencies. *See Project Basic Tenants Union v. Rhode Island Housing and Mortgage Finance Corp.,* 636 F.Supp. 1453 (D.R.I.1986). The suit included a challenge by Hillside to Stravato's interference and opposition to the project. A consent agreement, although never entered by the court, was signed by the city of Providence wherein the city agreed, *inter alia,* to issue all necessary permits

and licenses and to provide all services routinely rendered to multifamily housing developers.

**2.** Stravato carried out letter-writing efforts to stop the project beginning in 1978 and continuing until the mid–1980s. Stravato wrote letters to the Governor, United States Senators, the Department of Housing and Urban Development, and various other individuals.

Since the time of the ancient biblical proscriptions against bearing false witness against one's neighbor (Book of Exodus 20:16), to the Restatement (Second) *Torts* § 674, § 680 (1977)(wrongful initiation of proceedings), to the protections of limits on Strategic Litigation against Public Participation (SLAPP) suits, G.L.1956 (1985 Reenactment) chapter 33 of title 9 as enacted by P.L.1993, ch. 354, § 1 and P.L.1993, ch. 448, § 1 (suits that harass or inhibit another's rights), societies have attached liability—whether deferred or immediate—to litigation brought with malice and without probable cause. *See Brough v. Foley*, 572 A.2d 63, 66 (R.I.1990). One Anglo–Saxon sanction called for removing the tongue of the complainant who brought a frivolous suit, though monetary compensation could be substituted. 8 Stuart M. Speiser et al., *The American Law of Torts*° § 28:2 at 9 & n. 9 (1991).

▋ The torts of malicious prosecution and abuse of process, although often linked, are two distinct causes of action. Malicious prosecution or malicious use of process has been "defined as a suit for damages resulting from a prior criminal or civil legal proceeding that was instituted maliciously and without probable cause, and that terminated unsuccessfully for the plaintiff therein." *Nagy v. McBurney*, 120 R.I. 925, 929, 392 A.2d 365, 367 (1978). Abuse of process, on the other hand, arises when a legal proceeding, although set in motion in proper form, becomes perverted to accomplish an ulterior or a wrongful purpose for which it was not designed. *Brough*, 572 A.2d at 67–68 (citing *Nagy*, 120 R.I. at 934, 392 A.2d at 370). "Thus if the defendant prosecutes an innocent plaintiff for a crime without reasonable grounds to believe him guilty, it is malicious prosecution; if he prosecutes him with such [reasonable] grounds [but his ulterior motive is] to extort payment of a debt, it is abuse of process." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 121 at 897–98 (5th ed.1984).

These torts originally developed to prevent individuals from abusing their right of access to the courts and other tribunals. *See Melvin v. Pence*, 130 F.2d 423, 426 (D.C.Cir. 1942). Whereas historically such causes of action arose from misuse of *court* proceedings or *judicial* processes, the continually expanding role of administrative bodies that perform quasi-judicial functions created the setting for the abuse of administrative proceedings. *See id.*

The Rhode Island Legislature has recognized the increasing role of administrative bodies in determining individual rights and interests. The Administrative Procedures Act (APA), for example, requires administrative agencies, in contested cases, to afford all parties an opportunity for a hearing and reasonable notice of such hearing. G.L. 1956 (1993 Reenactment) § 42–35–9. In addition, all parties can present evidence, and argument on all issues, § 42–35–9(c), as well as conduct cross-examination in order to obtain full and true disclosure of the facts, § 42–35–10(c). Moreover, the Legislature recently attempted to balance two important competing interests through the enactment of G.L. 1956 (1991 Reenactment) § 45–24–67: one interest represents public participation in zoning board hearings; the other interest embodies the potential for abuse of such proceedings. The statute provides that "[p]articipation in a zoning hearing * * * shall not be a cause for civil action or liability *except* for acts not in good faith, intentional misconduct, a knowing violation of law, transactions where there is an improper personal benefit, or *malicious, wanton, or willful misconduct.*" (Emphasis added.)

Courts in other jurisdictions have also recognized the increasing role and importance of administrative agencies in adjudicating individual rights and interests. As early as 1932, liability for the tort of malicious prosecution was found to arise from a proceeding outside the traditional judicial process. In *National Surety Co. v. Page*, 58 F.2d 145, 148 (4th Cir.1932), the Fourth Circuit ruled that an attempt before a state corporation commission to revoke an insurance agent's license could give rise to suit for malicious prosecution. In 1942 the United States Court of Appeals for the District of Columbia held that a cause of action for malicious prosecution could arise from the malicious filing of a complaint before the District of Columbia

licensing authority in an attempt to revoke a private-detective license. *Melvin,* 130 F.2d at 424, 426. The *Melvin* court reasoned that certain administrative bodies possess the attributes and powers of traditional judicial bodies and embody the authority to affect private-interest rights in ways similar to the judicial determination of such rights. *Id.* at 426. In fact, in the sixty years since *National Surety Co.* and *Melvin,* numerous jurisdictions have recognized that misuse of certain administrative proceedings may give rise to claims for malicious prosecution and abuse of process.[3]

■ In following *National Surety Co., Melvin,* and their progeny, we too conclude that fora from which causes of action for malicious prosecution or abuse of process can arise are not limited to proceedings before judicial tribunals, but can also encompass certain administrative processes. In *Roberts v. City of Cranston Zoning Board of Review,* 448 A.2d 779, 781 (R.I.1982), this court held that the ordinary and customary meaning of the term "judicial proceeding" is " '[a]ny proceeding wherein judicial action is invoked and taken.' "[4] Black's Law Dictionary defines "judicial action" as "[a]n adjudication upon rights of parties who in general appear or are brought before tribunal by notice or process, and upon whose claims some decision or judgment is rendered." Black's Law Dictionary 847 (6th ed.1990). Thus judicial proceedings need not be construed as uniquely those proceedings before divisions of the Judiciary. *Roberts,* 448 A.2d at 781. Rather, the term comprises the quasi-judicial proceedings of administrative bodies that in essence determine legal rights outside the traditional court of law. *See Westminster*

*Corp. v. Zoning Board of Review of Providence,* 103 R.I. 381, 393–94, 238 A.2d 353, 360 (1968) (zoning board should, in appropriate case, afford parties the right to cross-examine); *Zimarino v. Zoning Board of Review of Providence,* 95 R.I. 383, 386, 187 A.2d 259, 261 (1963) (zoning board is " 'required to act judicially on facts lawfully ascertained' ").

As *Melvin* succinctly noted:

"In a broad sense [the creation of administrative bodies that carry out quasi-judicial functions] involves the emergence of a new system of courts * * *.

The same harmful consequences may flow from the groundless and malicious institution of proceedings in them as does from judicial proceedings similarly begun. * * * [An aggrieved's] right to redress the injury [should not] depend upon the technical form of the proceeding by which it is inflicted. The administrative process is also a legal process, and its abuse in the same way with the same injury should receive the same penalty." (Emphasis added.) 130 F.2d at 426.

Thirty-four years later the Restatement (Second) *Torts* § 680 at 468 (1977) recognized that, "One who takes an active part in the initiation, continuation or procurement of civil proceedings against another *before an administrative board* that has power to take action adversely affecting the legally protected interests of the other, is subject to liability." (Emphasis added.)

■ We are of the opinion that when a party invokes an administrative proceeding with malicious intent and without probable cause, that party should be subject to the same sanctions that would obtain if the action

---

3. *See Hardy v. Vial,* 48 Cal.2d 577, 580–81, 311 P.2d 494, 496 (1957); *DeLaurentis v. City of New Haven,* 220 Conn. 225, 249, 597 A.2d 807, 819 (1991); *American Credit Card Telephone Co. v. National Pay Telephone Corp.,* 504 So.2d 486, 489 (Fla. Dist. Ct.App.1987); *Dixie Broadcasting Corp. v. Rivers,* 209 Ga. 98, 105–06, 70 S.E.2d 734, 740 (1952); *Cassidy v. Cain,* 145 Ind.App. 581, 588, 251 N.E.2d 852, 856–57 (1969); *Rainier's Dairies v. Raritan Valley Farms, Inc.,* 19 N.J. 552, 564–66, 117 A.2d 889, 895–96 (1955); *Groat v. Town Board,* 73 App.Div.2d 426, 429, 426 N.Y.S.2d 339, 341 (1980); *Carver v. Lykes,* 262 N.C. 345, 352, 137 S.E.2d 139, 145 (1964); *Donovan v. Barnes,* 274 Or. 701, 704–05, 548 P.2d

980, 983 (1976); *Kauffman v. A.H. Robins Co.,* 223 Tenn. 515, 523, 448 S.W.2d 400, 403 (1969).

4. In *Roberts v. City of Cranston Zoning Board of Review,* 448 A.2d 779 (R.I.1982), this court interpreted "judicial proceeding," a term then included in the Opening Meetings Law, G.L.1956 (1977 Reenactment) § 42–46–5(c). In accordance with *Roberts,* § 42–46–5(c) was amended in 1982 by replacing "judicial proceeding" with "judicial branch of state government or probate court or municipal court proceedings." P.L.1982, ch. 352, § 1.

were brought in the judicial branch. Consequently, we conclude that the misuse of an administrative proceeding may give rise to claims for malicious prosecution and/or abuse of process. We caution, however, that only quasi-judicial contested administrative determinations or proceedings that establish the legal rights, duties, or privileges of a party after a hearing and that embody sufficient attributes of judicial proceedings may generate causes of action for malicious prosecution or for abuse of process. Specifically, such administrative proceedings should include at least (1) notice to the parties in interest, (2) the presentation of evidence and/or testimony under oath, and (3) a timely recorded decision by duly appointed or elected officials.

■ In applying this standard, we are of the opinion that proceedings initiated before a zoning board of review bear sufficient judicial attributes to support a claim for malicious prosecution or abuse of process. Pursuant to § 45–24–18, a zoning board of review is endowed with the authority to hold a hearing on an appeal by an aggrieved person. The board, in addition to giving public notice of the hearing, must give due notice to the parties in interest. *Id.* A zoning board of review also must "keep minutes of its proceedings, showing the vote of each member upon each question * * * and shall keep records of its examinations." Section 45–24–15.

In the instant case, defendant filed an appeal to the board pursuant to § 45–24–16. The board, in accordance with chapter 24 of title 45, held a hearing at which the testimony of defendant, the Director of the Department of Inspection and Standards, and other interested persons was heard. Other evidence, exhibits, testimony under oath, memoranda of law, and oral arguments by counsel for the parties were considered by the board in reaching its decision. These indicia were adequate to classify the hearing as a quasi-judicial legal determination. Thus, the proceedings before the zoning board of review embodied sufficient trappings of the judicial process to support claims for malicious prosecution and abuse of process.

■ Because public policy supports open access to the courts and to public agencies, and because the torts of malicious prosecution and abuse of process are " 'not favored in the law,' " 8 *The American Law of Torts* § 28:3 at 10; *accord Brough,* 572 A.2d at 66, we do not expect that our decision will chill the use of administrative procedures or deny access to administrative agencies.

## REMAINING ISSUES

■ We examine two further issues. First, defendant contended that plaintiff may not maintain the instant action because it was not a "party" in the action before the board. It is undisputed that as a result of defendant's petition, the board reviewed plaintiff's application to determine whether the project violated ordinances of the city of Providence. If violations had been found, the board would have rescinded plaintiff's building permit and the project would have been terminated. Thus, plaintiff's property interest was the sole matter before the board, as evidenced in part by the listing of only two parties, defendant, as appellant, and plaintiff, as owner of the premises, on the notice of appeal. Moreover, the parties were given an opportunity to submit memoranda of law and present arguments to the board, further signs of plaintiff's status as a party in interest in the appeal. Consequently, we reject defendant's contention that plaintiff was not a party to the action before the board.

■ Second, we find no merit in defendant's contention that an appeal to a zoning board of review does not constitute the "initiation" of a legal proceeding. The defendant implied that *plaintiff* initiated the administrative process by filing an application for a building permit. In defendant's view, the appeal to the zoning board was merely the continuation of a process that had been set in motion by plaintiff. We reject defendant's analysis.

Although it is true that plaintiff filed an application for a building permit, it was defendant's *appeal* from the issuance of that permit that initiated the contested case before the board. We note that even though filing an appeal does not normally constitute

the initiation of an action, the one before us is distinguishable from an appeal in the traditional judicial process. Although denominated an appeal, defendant's filing of the notice to the board operates in the same manner as the filing of a complaint in the Superior Court. Filing the appeal with the board was the act that initiated the contested proceeding by challenging the permit. We hold; therefore, that the instant appeal of the issuance of a building permit to a zoning board of review constituted the initiation of a legal proceeding in a claim for malicious prosecution or a claim for abuse of process.

 In the case before us, the trial justice directed a verdict for the defendant after concluding that the alleged misuse of administrative proceedings could not give rise to such claims. Because we do not sustain that conclusion, it must yet be determined whether the defendant's actions were taken with malicious intent and without probable cause, findings that must be made before the claims can be sustained. The plaintiff still bears the burden of presenting clear proof that the defendant acted out of malice and without probable cause. *Brough,* 572 A.2d at 66.

Accordingly, for the reasons stated herein, the plaintiff's appeal is sustained. The judgment of the Superior Court is reversed, and the papers are remanded to the Superior Court for a trial on the merits.